Dear Dr. Marier:
You have requested an opinion of the Attorney General regarding an interpretation of a provision contained in House Bill No. 1162 which became Act. No. 3 of the 1997 Regular Session of the Louisiana Legislature (the "Act"). The Act transferred the operation of Louisiana's public hospital system from the Louisiana Health Care Authority to the Louisiana State University Medical Center (LSUMC). See R.S. 17:1519 through 1519.8. It also authorized the establishment of the Louisiana State University Medical Center Health Maintenance Organization (LSUMC-HMO). See R. S. 22:3021 through 3022. Your inquiry pertains to enrollment in the LSUMC-HMO.
Prior to a discussion and resolution of your specific inquiry, we believe a brief historical summary of the role of the public hospital system in providing medical care to the citizens of Louisiana and the sources of revenue which make such care possible, would be helpful. For this we turn to the Act and the informative materials furnished by you and your consultant, Carol A. Solomon.
We find the following excerpts from the Act to be relevant to your opinion request:
 "§ 1519.1. State hospitals; transferred to the Board of Supervisors of Louisiana State University and Agricultural Mechanical College; merger with Louisiana State University Medical Center
 A. (1) The hospitals enumerated in Subsection B are hereby transferred to the board. Louisiana State University Medical Center shall be responsible for their operation as more specifically provided in this subpart. They shall be operated primarily for the medical care of the uninsured and medically indigent residents of the state and others in need of medical care and as teaching institutions.
* * *
 G. To insure the provision of adequate service, hospitals shall maintain policies of access to services governed by the following:
 (1) The medically indigent or uninsured shall be afforded first priority for admission for any form of treatment available at a particular hospital.
 (2) Those persons who are determined not to be medically indigent or uninsured or those with emergency medical conditions or requiring services not otherwise available shall be admitted on a space available basis and shall be reasonably charged for treatment or service received.
 § 1519.3. Powers and duties of the board, medical center, and health care services division
 A. The board shall have the following general powers and duties, any or all of which it may delegate to the medical center or the division:
 (1) To provide health and medical services including services for the uninsured and medically indigent residents of Louisiana, through the operation of health care facilities and otherwise, as provided in this subpart . . .
* * *
 § 3021. Establishment of the Louisiana State University Medical Center Health Maintenance Organization
 A. The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College may create a health maintenance organization to be called the Louisiana State University Medical Center Health Maintenance Organization, which shall include all hospitals, clinics, and such medical service provider organizations as shall be established by or under the direct control of the Louisiana State University Medical Center.
 B. Subject to the approval of the commissioner of insurance, the chancellor of the Louisiana State University Medical Center may promulgate rules and regulations, in accordance with the procedures provided in R.S. 17:1519.2(D), to create the Louisiana State University Medical Center Health Maintenance Organization . . . .
* * *
 E. The rates charged for services by the Louisiana State University Medical Center Health Maintenance Organization shall be based on actuarially derived costs of providing care to the same population as certified by the Department of Health and Hospitals.
 F. The Louisiana State University Medical Center Health Maintenance Organization shall be limited to persons eligible for Medicaid or eligible for enrollment in a managed care plan pursuant to the state Medicaid plan and pursuant to Title XIX (Medicaid) of the Social Security Act or a successor to the Medicaid program.
* * *
 H. All Medicaid managed care plans implemented as part of this Section shall be limited to programs implemented by the Department of Health and Hospitals in accordance with state law." [Emphasis added.]
As can be gleaned from the above, the primary function and mission of the public hospital system is to provide medical care to the uninsured and medically indigent residents of the state. While priority is given to the uninsured and medically indigent, the Act also provides for the care of other patients who are determined not to be medically indigent or uninsured. Such persons are admitted on a space available basis and must be reasonably charged for treatment.
You note that the public hospital system has provided health care services to approximately one million uninsured persons, and also to persons underinsured with problems of access to medical care. Approximately seventy percent of these individuals have sought care at one of the Charity hospitals. Although Medicaid patients are free to utilize their benefits to obtain health care services in the private sector, over twenty-one percent chose the public hospital system for treatment. While Medicaid patients comprise only twenty-one percent of the patients being served through the public hospital system, Medicaid revenues comprise nearly eighty percent of the system's budget. Erosion of the Medicaid patient base could be potentially devastating to the budget and the continuity of care to the state's uninsured population.
You further state that the Department of Health and Hospitals (DHH) is in the process of moving the state's Medicaid population into managed care programs. The first of these programs is being implemented in DHH's Region 3 which comprises the Houma/Thibodaux area. This will be a mandatory managed care program, which means that certain categories of Medicaid recipients in this area must choose an HMO provider for all of their medical care. It is your position that the program constitutes a managed care plan pursuant to the state Medicaid plan. Further, LSUMC must participate in this program to insure retention of its Medicaid revenue base so that the viability of its mission to provide health care services to the uninsured is not compromised. You maintain that the legislative authority to establish the LSUMC-HMO was granted for the very purpose of retaining this patient base.
On July 24, 1997, DHH issued a document entitled "Medicaid Region 3 Managed Care Project" (Project), which discusses the criteria for participation in the Project. One of the prerequisites for participation is compliance with a federal Medicaid 75/25 rule for enrollment as per 42 C.F.R. § 434.26. This rule mandates that at least 25% of the HMO's total membership must be non-Medicaid clients, unless a federal waiver has been obtained. LSUMC-HMO is in the process of obtaining this waiver.
A prerequisite to the waiver is a determination by the federal government that the HMO has made, and continues to make, a reasonable effort to enroll the 25% non-Medicaid members. If granted the waiver, LSUMC-HMO would have three years within which to capture the required 25%. You advise that LSUMC-HMO would only need the waiver for the first year due to the fact that thereafter, the 75/25 rule will be rescinded and the issue will be moot. This brings us to the issue at hand, to wit: Can the LSUMC-HMO apply for the waiver and participate in the Region 3 Program?
In answer to your question, we refer you to R.S. 22:3021(F), quoted supra, which limits the enrollment in LSUMC-HMO to (1) persons eligible for Medicaid or (2) persons eligible for enrollment in a managed care plan pursuant to the state Medicaid plan and Title XIX (Medicaid) of the Social Security Act. We are of the opinion that the Region 3 Project clearly constitutes a state Medicaid plan adopted and implemented by DHH and pursuant to Title XIX of the Social Security Act.
The plan (i.e., the Project) requires, by federal rule, that 25% of the enrollees be non-Medicaid. We find no specific prohibition in the Act which would prevent the LSUMC-HMO from participating in this Project, including the 75/25 requirement. To the contrary, the Act provides that the public hospital system be operated primarily for the medical care of the uninsured and medically indigent residents of the state and others in need ofmedical care. R.S. 17:1519.1(A)(1). Further, it directs hospitals to maintain policies of access to service with first priority to the medically indigent and uninsured and, then, on a space available basis, to those persons determined not to be medicallyindigent or uninsured.
Accordingly, it is the opinion of this office that LSUMC-HMO may participate in the Region 3 Project which includes a federal requirement that 25% of enrollees be non-Medicaid. We further find no prohibition against LSUMC-HMO applying for the federal waiver which will require it to make reasonable efforts to meet the 75/25 rule.
This opinion is not intended, in any way, to erode upon the primary function or mission of the public hospital system — to care for the medically indigent and/or uninsured residents of this state. Thus, extreme care should be exercised to insure that Section 1519.2(1) is complied with and that these residents be afforded first priority for admission and/or treatment.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ______________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/cla